

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/09/2009

| | | |
|---|---|---|
| IN RE: | § | Case No. 08-30403 |
| CEDRIC K. JOHNSON, NANCY H. | § | Chapter 13 |
| JOHNSON, | § | |
|     Debtor(s). | § | Judge Isgur |

## MEMORANDUM OPINION REGARDING LENDER FEES

In ten, unrelated chapter 13 bankruptcy cases, Wells Fargo Bank, N.A. or America's Servicing Company seek reimbursement of $250.00 fixed fees that were paid by the respective lender to its bankruptcy attorney. In each case, the $250.00 fees were paid to the Barrett Daffin Frappier Turner & Engel, LLP law firm as compensation for initial work after the law firm was hired to represent Wells or America's Servicing in these bankruptcy cases. The initial set-up work included both internal administrative tasks and the filing of the initial proof of claim in each case. In one case, an additional $75.00 is sought for the filing of an amended proof of claim. In all cases, an additional $150.00 is sought for the filing of the applications for payment.

On April 1, 2009, the Court conducted a consolidated evidentiary hearing. The evidence is unambiguous that the $250.00 fees were actually paid by Wells or America's Servicing and that the fees were market rate fees for the services performed. No party-in-interest presented any evidence challenging the reasonableness of the fees.

Two separate legal issues are resolved by this opinion. First, in two of the cases, the proofs of claim were intentionally filed with inaccurate information. As set forth in more detail below, the Court will not allow a lender to collect charges when the charges include amounts for filing an intentionally inaccurate proof of claim.

Second, in the remaining eight cases, the Court will evaluate whether the fees should be awarded based on whether the fees are "provided for under the agreement[s]" under which the

claims arose. 11 U.S.C. § 506(b). Within this second issue, there are two principal legal issues that the Court will address:

- Are the fees authorized in those cases in which the related promissory note was not accelerated?

- In cases in which the related note was not accelerated, are the fees nevertheless authorized if the fees were for the purpose of collecting on the promissory note (as opposed to being for the purpose of preserving the lender's collateral)?

### General Entitlement to Fees

In most bankruptcy cases, the award of legal fees is the exception rather than the rule. *In re Nair,* 320 B.R. 119 (Bankr. S.D. Tex. 2004). However, § 1322(b)(2) provides an exception to this general rule. The exception applies only in chapter 13 cases. Each of these cases is filed under chapter 13.

If a lender's claim is secured solely by a debtor's principal residence, a chapter 13 plan may not modify the rights of the holder of a secured claim. 11 U.S.C. § 1322(b)(2). In each of these cases, a plan was confirmed and the fees are sought out of distributions to be made by the chapter 13 trustee. The fees should be awarded if the fees are allowable under the loan agreements between the respective lenders and borrowers. *Sponaugle v. First Union Mortg. Corp.,* 40 Fed.Appx. 715 (3d Cir. 2002). No party contests this question of law.

The scope of this rule is not limitless, as was recently addressed by Judge Shannon. *In re Watson,* 384 B.R. 697 (Bankr. D. Del. 2008). Judge Shannon correctly held that although the fees were to be determined in accordance with applicable non-bankruptcy law, the determination of the amount of the fees could properly be made by the bankruptcy court. *Id.*

> Those "rights" are determined according to state law and the contract terms. *See Nobelman v. American Sav. Bank,* 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L. Ed. 2d 228 (1993). When the Court, applying these principles, disallows a requested fee or charge, that is a determination that applicable law, or the mortgage contract, do not afford the Mortgage Lender a "right" to payment. At bottom,

acknowledgment of the Court's exercise of its authority to rule conclusively upon asserted claims and charges is simply not an impermissible modification of the Mortgage Lenders' rights.

*Id.* at 703.

This Court has also addressed whether § 1322(b)(2)'s preservation of a home lender's rights under its security agreements precludes the Court from determining the appropriate amount of a fee award. *In re Campbell,* 361 B.R. 831 (Bankr. S.D. Tex. 2007, *aff'd* in part and *rev'd* in part on other grounds, 545 F.3d 348 (5th Cir. 2008)).

As in *Campbell,* "Texas law governs whether the fees charged pursuant to the agreement are reasonable. Reasonableness of legal fees is a question of fact and must be supported by competent evidence." *Id.* at 850. In determining the appropriate amount of fees, the Court may consider:

> (1) the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *Arthur Andersen & Co. v. Perry Equip. Co.*, 945 S.W.2d 812, 818 (Tex. 1997); *Academy Corp. v. Interior Buildout & Turnkey Constr., Inc.,* 21 S.W.3d 732, 742 (Tex.App.-Houston [14th Dist.] 2000, no pet.); see also *In re Valdez*, 324 B.R. 296, 300 (Bankr. S.D. Tex. 2005)

*Id.* at 850-51.

In summary, the Court concludes that the Bankruptcy Code preserves Wells' and Americas Servicing Company's ability to charge legal fees against these chapter 13 Debtors, but only to the extent allowed by applicable non-bankruptcy law.

**The Intentionally Inaccurate Proofs of Claim**

As set forth above, the Court must determine whether the fees were reasonable in accordance with applicable non-bankruptcy law. The initial factor for the determination of the proper award of legal fees is "the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly." *Id.*

For the reasons set forth below, the Court finds that no fees should be awarded in the two cases in which intentionally inaccurate proofs of claim were filed. The filing of a proof of claim is a simple task, often carried out by a non-lawyer. In these two cases, there were no novel or difficult questions. Nevertheless, the proofs of claim were intentionally filed inaccurately. Under such circumstances, the Court finds that the proper award of fees must be $0.00.

Bankruptcy Local Rule 3015(b) mandates that secured home loan payments must be made through the chapter 13 trustee on any secured home loan with a pre-petition default. On motion, parties may obtain a waiver of the requirement of the local rule. Compliance with this local rule imposes certain costs on debtors to pay fees to the chapter 13 trustee.[1] Because these costs may be disproportionately high when the pre-petition default amount is low, two debtors requested that the lenders file inaccurate proofs of claim to eliminate the pre-petition default amount from appearing on the proofs of claim. If it is determined that there are no pre-petition payment defaults (a determination normally made by examining the lender's proof of claim), the debtors are not required by BLR 3015(b) to make payments through the chapter 13 trustee.

---

[1] Notwithstanding these costs, the Court has concluded that the overall costs of administering chapter 13 cases may actually be reduced by the local rule. This reduction is attributable to a dramatic reduction in: (1) legal fees and costs for attending contested hearings; (2) the filing for motions for relief from the stay; (3) the number of modified plans; and (4) the overall default rate.

By agreement with the debtors, the inaccurate proofs of claim were filed for the purpose of avoiding the impact of BLR 3015. These inaccurate proofs of claim were filed in both the *Green*[2] and *Johnson*[3] cases.

In the *Green* case, Wells filed a proof of claim for $194,395.87 in which it claimed that there were no payment arrearages as of the petition date. The proof of claim was signed by Angie Marth. Arrearages did in fact exist, but the parties agreed to cure these arrearages with direct, post-petition payments. This agreement was made before Wells filed its first proof of claim. Therefore, the proof of claim that was filed –eliminating the arrearages – was intentionally inaccurate. There were arrearages, but debtor's counsel and Wells simply agreed to omit them from the proof of claim and to falsely include them in post-petition charges.

In the *Johnson* case, Wells filed a proof of claim for $113,135.12 in which it claimed arrearages of $2,974.87. The proof of claim was also signed by Angie Marth. However, after receiving a request from debtor's counsel, Wells filed an amended claim in which it stated that it was owed $112,885.12 without any arrearages. This claim was signed by Abbey Ulsh. At the evidentiary hearing, Mr. Turner (a principal at the Barrett Daffin firm) testified that the arrearages were placed into the post-petition payments due to Wells rather than being included in the arrearage. ***Mr. Turner specifically stated that the change was made so that the "proof of claim that the Court sees has no negative escrow in it."***

Wells may not file proofs of claim for the purpose of having the Court "see" something different than what is truthful. And the Court will not condone such conduct. By hiding the true amounts, the Court, the trustee, and other creditors were misled. To now expect the Court to approve fees for such inappropriate conduct requires the Court to suspend its conscience and the

---

[2] *In re Carl Green, Sr.*, Case No. 07-38861.

[3] *In re Cedric K. and Nancy H. Johnson*, Case No. 08-30403.

5 / 11

law.  *See 11 U.S.C. § 105; Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 127 S.Ct. 1105, 166 L. Ed. 2d 956 (2007) (holding that § 105 and the Court's inherent power allow a bankruptcy court to take appropriate action to prevent abusive litigation practices).  The Court will not authorize payment for conduct that intentionally misled the Court.  Wells, Green, the Johnsons and each of their respective counsel are cautioned that a simple denial of fees will not be the remedy for future mendacities.

## The Accelerated Promissory Notes

Of the eight remaining promissory notes, the notes in the *Reynolds* case,[4] the *Gainous* case,[5] the *Cruz* case[6] and the *Brown* case[7] were accelerated prior to the commencement of these bankruptcy cases.  Each of those four notes contains clauses allowing the collection of fees and costs following acceleration.

The *Reynolds* note and the *Cruz* note provide that "[i]f the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees."

The *Gainous* note provides that "[i]f collection on this note is made through a Probate Court or a Bankruptcy Court, or other appropriate legal proceedings, or if after default this note is placed in the hands of an attorney at law for collection, the undersigned promise(s) to pay all costs of collection, including attorney fees, if actually incurred, not to exceed ten per centum . . . ."

---

[4] *In re Cordelia Reynolds,* Case 07-38866.

[5] *In re Detrecia Chalette Gainou*s, Case No. 07-38072.

[6] *In re Rebecca B. Cruz,* Case No. 07-38179

[7] *In re Nicole S. Brown,* Case No. 07-38940..

The *Brown* note provides that "[i]f Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses, including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law."

The Court sees no ambiguity in the promissory notes. Following acceleration, the agreement provides that the lender may collect its reasonable fees and costs. The reasonableness of the fees and costs (totaling $400.00 per case) is not at issue. Accordingly, the $400.00 fee is awarded in each of the *Reynolds, Cruz, Gainous* and *Brown* cases.

## The Unaccelerated Promissory Notes

The four remaining motions are those in the *Collins*,[8] *Mayberry*,[9] *Harris*[10] and *Spillman*[11] cases.

### *Collins* and *Spillman*

The *Collins* proof of claim reflects $11,079.35 in payment arrearages as of the petition date. The *Spillman* proof of claim reflects $47,821.87 in payment arrearages as of the petition date.

The *Collins* and *Spillman* notes provide that "[i]f the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees."

---

[8] *In re David Orlando Collins,* Case No. 07-38246.

[9] *In re Richard Mayberry and Elizabeth C. Mayberry,* Case. No. 08-32062.

[10] *In re Terrance Harris and Brenda Harris,* Case No. 07-38530.

[11] *In re Jeffrey Spillman,* Case No. 07-38332.

The Court sees no ambiguity in the *Collins* and *Spillman* notes. Without acceleration, there is no agreement in the notes for the collection of legal fees and other costs. Nevertheless, there are provisions in the two deeds of trust that allow the imposition of fees and charges. However, these provisions only allow imposition of fees and charges if the fees and charges were incurred to protect the lender's collateral under the deed of trust

The *Spillman* deed of trust provides that after default "Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs." The Court interprets this provision as providing for a fee recovery for actions taken to protect the lender's interest in the property.

The testimony at the April 1 hearing regarding the purpose of the underlying $250.00 fee does not support any inference that the fee was incurred to protect any interest in the collateral. On the contrary, the Court concludes that the purpose of the $250.00 fee was to file a proof of claim for collection of the note and to set up the bankruptcy case for review of routine matters. A lender's interest in the collateral is limited to its lien securing the note. A lender need not participate in the bankruptcy process to preserve its lien rights. Any challenge to the lender's lien position would require an adversary proceeding and would not be covered by the initial fee. Inasmuch as the base $250.00 fee award cannot be sustained, the lenders are also not entitled to their $150.00 request for the filing of the unsuccessful application for a fee award.

The *Collins* deed of trust also only allows imposition of fees incurred to protect the property. The deed of trust provides that "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest

in the Property *and* rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees." (emphasis added).

Accordingly, even in the absence of acceleration, fees and expenses may be charged under the *Collins* Deed of Trust. However, the fees and expenses must be for the protection of both the Lender's interest in the Property and the Lender's rights granted under the Security Instrument. In their joint brief on this matter, Wells and America's Servicing would have the Court substitute the word "or" for the word "and." With that substitution, Wells and America's Servicing argue that the Court should interpret the deeds of trust to allow fees for the breach of the obligation to pay the note that arises under these deeds of trust. With this sleight of hand, Wells and America's Servicing would take away the acceleration requirement in the note by claiming that the payment obligation for the note simultaneously exists under the deed of trust.

In any event, the Court sees little reason to reconcile the note and the deed of trust. The note requires acceleration. The deed of trust requires—in the conjunctive—both an enforcement of a provision in the deed of trust *and* a preservation of the property. The fees at issue were not incurred to preserve the property.

## *Mayberry* and *Harris*

According to the Wells' proof of claim, there were no payment defaults when the *Mayberry* case was filed. The note had not been accelerated. Similarly, there were no payment defaults when the *Harris* case was filed and the *Harris* note had not been accelerated.

The *Mayberry* and *Harris* notes provide that "[i]f the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees."

As with the *Collins* and *Spillman* cases, the Court sees no ambiguity in the *Mayberry* or *Harris* notes. If the notes were not accelerated, there is no agreement in the notes for the collection of legal fees and other costs. Nevertheless, there are also relevant provisions in the *Collins* and *Harris* deeds of trust.

The relevant deed of trust provision reads as follows:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over the Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lenders interest in the Property ***and*** rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include but are not limited to: (a) paying any sums secured by a lien which has priority over the Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect it interest in the property ***and/or*** rights under the Security Instrument, including its secured position in a bankruptcy proceeding. (emphasis added).

The Court is admittedly confused about the use of the word "and" (emphasized above) and the words "and/or" (also emphasized above) in seemingly parallel sentences.

For the purposes of applying this provision in these cases, the Court presumes—but does not find—that the ambiguity could be resolved in Wells' favor. If so, then Wells could collect its fees under the deeds of trust if it were enforcing a right under the deed of trust even if that right did not pertain to preservation of the collateral. However, Wells identified only a single right under the deed of trust that was purportedly protected by its actions in these cases. That is the provision in the deed of trust in which the debtor's covenant to timely pay the note.

Well's brief also only references the deed of trust provision against payment default. But, Wells' proofs of claim in the *Mayberry* and *Harris* cases reflect that no payment default existed as of the petition date. Inasmuch as no payment default existed as of the petition date in

either case, Wells has not established the factual basis on which it might be entitled to collect its legal fees in either the *Harris* or the *Mayberry* case. The evidence reflects that the legal fees were not paid in order to protect the property and the evidence affirmatively shows an absence of any payment default that would invoke the lender's rights under the deeds of trust.

## Conclusion

Under the appropriate facts, the secured lenders in these cases would be entitled to collect their reasonable fees. In four of the ten cases that were heard on April 1, 2009, the secured lenders established the requisite facts. In each of those four cases, the Court awards $400.00 to the lender, which shall be paid by the chapter 13 trustee in accordance with the confirmed plan in those cases. In the other six cases, the lenders have failed to establish that the fees that they incurred can be awarded under the particular facts of the case. Accordingly, in those six cases, the fee requests are denied. In the two cases in which counsel intentionally filed an inaccurate proof of claim, counsel is cautioned that immediate corrective action should be taken to avoid similar actions in the future.

SIGNED **June 8, 2009.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE